**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER ELSEY and ) <br> ROSANNA ELSEY, ) <br> on behalf of themselves and a class, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> vs. ) <br>  ) <br> PIERCE & ASSOCIATES, P.C., ) <br>  ) <br> Defendant. ) | 08 CV 2538 <br> Judge Zagel <br> Magistrate Judge Brown |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs have requested that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendant Pierce & Associates, P.C. This memorandum is submitted in support of that motion.

**I.   NATURE OF THE CASE**

Plaintiffs' facts are illustrative of a standard practice used by defendant Pierce & Associates, P.C. On December 12, 2007, Pierce & Associates, P.C. filed a foreclosure lawsuit against plaintiffs in Rock Island, Illinois, entitled <u>HSBC Bank USA, N.A., as trustee v. Christopher E. Elsey and Rosanna S. Elsey</u>, 07 CH 550. On or about February 11, 2008, an "attorney affidavit" was filed listing service costs at $150.00 (<u>Exhibit A</u>). The "attorney affidavit" states that:

" ...pursuant to the subject Mortgage, the mortgagors are obligated to pay the following;

| | |
|---|---|
| Title Costs .................................$ | 500.00 |
| Clerk's Fee.................................$ | 231.00 |
| **Service of Summons.................. $** | **150.00** |
| Recording Lis Pendens Notice ....$ | 43.50 |
| Reasonable Attorneys Fees ........$ | 1,100.00 |
| Total ...................$ | 2,024.50" |

Plaintiffs contend that no public official or private process server received or is owed $150.00 for services in connection with the foreclosure lawsuit. Illinois Supreme Court Rule 101(d)

1

requires that the officer or other person to whom a summons is given for service return it with "indorsement of service and fees." The summonses in the foreclosure lawsuit were served by Russwurm Services, Ltd., d/b/a DocumentServe Express, a licensed Illinois private investigation service. On information and belief no amount was indorsed on the summonses served.

The $150.00 actually represents the amount of a bill from Provest LLC. Provest LLC describes itself (www.provest.us) as a "process server management company" that "[s]pecializ[es] in loss mitigation, location of mortgage borrowers and foreclosure support" and is a member of the Mortgage Bankers Association, American Legal & Financial Network, and United States Foreclosure Network. The number inserted in the "attorney affidavits" filed by defendant frequently includes the fees of Provest and other companies engaged in similar businesses, and which do not represent fees for the actual service of process by the person or persons engaged in such service; the fees of a company such as Provest are not "Service of Summons" and are not accurately identified in the "attorney affidavit."

Defendant Pierce & Associates, P.C. has regularly caused "attorney affidavits" to be filed in foreclosure proceedings that include as "Service of Summons" amounts paid to Provest and other companies that do not reflect actual amounts disbursed to persons that serve process.

Plaintiffs allege that the imposition of bogus and misrepresented fees in connection with mortgage foreclosure proceedings described above violates the FDCPA as constituting a "false, deceptive, or misleading representation or means in connection with the collection of any debt" (§1692e), a false representation of the debt (§1692e(2)), a "threat to take any action that cannot legally be taken or that is not intended to be taken" (§1692e(5)), the use of a "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (§1692e(10)), an unfair practice (§1692f), and an attempt to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law..." (§1692f(1)). "It is unfair to consumers under the FDCPA to hide the true character of the debt,

thereby impairing their ability to knowledgeably assess the validity of the debt." Fields v. Wilber Law Firm, 383 F.3d 562, 566 (7th Cir. 2004).

## II. THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the:

**universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254 (7th Cir. 1994). The standard is an objective one – whether the plaintiff or any class member was misled is not an element of a cause of action. "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 392 (D. Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. Cirkot

v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir.1997); Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D.N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D. Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr. N.D. N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom*. Crossley v. Lieberman, 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666 (7th Cir. 2001); Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers...." FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them...." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." Cacace v. Lucas, 775 F. Supp. at 505. Accord, Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir.2000).

### III. STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in Eshaghi v. Hanley Dawson Cadillac Co., 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.** (574 N.E.2d at 764, 766).

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. Keele v. Wexler & Wexler, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., Mar. 18, 1996), *aff'd*, 149 F.3d 589 (7th Cir. 1998); Avila v Van Ru Credit Corp., 94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), *aff'd*, Avila v. Rubin, supra, 84 F.3d 222; Blarek v. Encore Receivable Mgmt., Inc., 2:06cv420, 2007 U.S. Dist. LEXIS 58182 (E.D. Wis., Aug. 8, 2007); Seeger v. AFNI, Inc., 2:05cv714, 2006 U.S. Dist. LEXIS 55709 (E.D. Wis., Aug. 9, 2006); Carroll v. United Compucred Collections, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D. Tenn., Nov. 15, 2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn., Mar. 31, 2003), *aff'd*, 399 F.3d 620 (6th Cir. 2005); Wahl v. Midland Credit Mgmt., 06 C 1708, 2007 U.S. Dist. LEXIS 39626, *14-15 (N.D. Ill., May 30, 2007); Carr v. Trans Union Corp., C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill. 1995) (similar); Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class

certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV.     THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A.     Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive...." Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the class numbers at least 40, joinder is generally considered impracticable. Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); Riordan, 113 F.R.D. 60 (10-29 sufficient); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968) (25 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70). It is not necessary that the precise number of class members be known. "A class action may proceed upon estimates as to the size of the proposed class." In re Alcoholic Beverages Litigation, 95 F.R.D. 321 (E.D. N.Y. 1982); Lewis v. Gross, 663 F. Supp. 1164, 1169 (E.D. N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity." Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination.... Where the exact size of the class is unknown, but it is general knowledge or

common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable."  2 Newberg on Class Actions (3d ed. 1992), §7.22.A.

For example, it is reasonable to infer numerosity from the use by a large collection agency of a standard form document.  Swiggett v. Watson, 441 F. Supp. 254, 256 (D. Del. 1977) (in action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, fact that Department of Motor Vehicles issued printed form for such transfer in and of itself sufficient to show that numerosity requirement was satisfied); Westcott v. Califano, 460 F. Supp. 737, 744 (D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of); Carr, 1995 U.S. Dist. LEXIS 567 (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers in which court inferred numerosity from the use of form letters); Colbert, 1995 U.S. Dist. LEXIS 578 (same); Keele, 1996 U.S. Dist. LEXIS 3253.

Here it is reasonable to infer that the number of class members exceeds the minimum necessary because:

    a.    This action complains of a standard practice used by defendant.

    b.    Exhibit A is a document, prepared by inserting names, dates and numbers into a template.  The "Service of Summons" is part of the template.

    c.    This year alone, Pierce & Associates, P.C. has filed over 850 cases in Illinois alone.  (Exhibit B).

**B.     Rule 23(a)(2) – Commonality; and  Rule 23(b)(3) – Common Questions of Law or Fact Predominate**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law or fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. Halverson v. Convenient Food Mart, Inc., 69 F.R.D. 331 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement ... is usually met." Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D. Ill. 1984); Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988). The authorities hold that cases dealing with the legality of standardized conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. Halverson, 69 F.R.D. 331; Haroco v. American Nat'l Bank, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); Kleiner v. First Nat'l Bank, 97 F.R.D. 683 (N.D. Ga. 1983) (same); Heastie, 125 F.R.D. 669 (execution of home improvement financing documents in sequence that evaded consumers' rescission rights). This is true even though the nature and amount of damages may differ among the members of the class. Id.

In this case, the "common nucleus of operative fact," Halverson, 69 F.R.D. at 335, is that defendant described and attempted to collect as court costs sums which are not collectible as such. The dispositive issue – indeed, the only issue – is whether this practice violates the FDCPA.

The only individual issue is the identification of the consumers from whom defendant attempted to collect as court costs sums which are not collectible as such, which should be readily ascertainable from defendant's files. Readily answered questions of this nature do not present an obstacle to class certification. Heastie v. Community Bank, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank"); Wilkinson v. F.B.I., 99 F.R.D. 148, 157 (C.D. Cal. 1983) ("a need for individual proof of damages would not preclude class certification. 'The amount of damages is invariably an individual question and does not defeat class treatment.'");

Franklin, 102 F.R.D. at 949 (similar).

The Seventh Circuit has held that the need for "separate proceedings of some character ... to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement ... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." Id.

### C.    Rule 23(a)(3) – Typicality

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named plaintiffs.

### D.    Rule 23(a)(4) – Adequacy of Representation

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff

must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiffs understand the obligations of a class representative, and have retained experienced counsel, as is indicated by Exhibit C, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, plaintiffs and the class members seek money damages as the result of defendant's unlawful collection demands. Given the identity of claims between plaintiffs and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiffs and those of the class.

**E.    Rule 23(b)(3) – Class Action Is Superior to Other Available Methods of Resolving This Controversy.**

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. Scholes, 143 F.R.D. at 189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D. Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "... inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor. The vast majority of debtors are undoubtedly unaware that their rights are being violated.

The fact that there are large numbers of class members "is no argument at all" against certification. Carnegie v. Household Int'l, Inc., supra, 376 F.3d 656, 660-61 (7th Cir. 2004). "The

10

more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.... The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all." Id.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted). Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

Lake v. First Nationwide Bank, 156 F.R.D. 615, 628-629 (E.D. Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. Zanni, 119 F.R.D. 32.

### V. CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiffs

respectfully request that this Court certify this action as a class action.

                                             Respectfully submitted,

                                             s/ Daniel A. Edelman
                                             Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Joel Deutsch
DEUTSCH & DEUTSCH
1825 - 3rd Ave.
Rock Island, IL 61201
(309) 788-9541
(309) 794-1195 (FAX)

## **CERTIFICATE OF SERVICE**

       I, Daniel A. Edelman, hereby certify that on May 8, 2008, the foregoing document was filed electronically using the Court's CM/ECF system. A copy of the foregoing document was served via hand delivery on the following:

Pierce & Associates, P.C.
c/o Diana N. Athanasopou, Registered Agent
One North Dearborn Street
Suite 1300
Chicago, IL 60602

                                                  s/ Daniel A. Edelman
                                                  Daniel A. Edelman